IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| DERRICK M., § | |
|     PLAINTIFF, § | |
| § | |
| V. § | CIVIL CASE NO. 3:18-CV-151-M-BK |
| § | |
| NANCY BERRYHILL, § | |
| ACTING COMMISSIONER OF SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
|     DEFENDANT. § | |

FINDINGS, RECOMMENDATIONS, AND CONCLUSIONS
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, this case has been referred to the undersigned United States magistrate judge for pretrial management, including recommended disposition. Before the Court are the parties' cross-motions for summary judgment. Doc. 10; Doc. 11. For the reasons that follow, Plaintiff's *Motion for Summary Judgment* should be **DENIED**, Defendant's *Motion for Summary Judgment* should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

**I. BACKGROUND**

    **A. Procedural History**

Plaintiff seeks judicial review of a final decision of the Commissioner denying his claim for disability insurance benefits ("DIB") under the Social Security Act ("the Act"). Plaintiff filed for benefits in June 2016, claiming that he became disabled on December 14, 2013. Doc. 7-1 at 78, 160. His date last insured ("DLI") was December 31, 2014. Doc. 7-1 at 18. Plaintiff's application was denied at all administrative levels, and he now appeals to this Court pursuant to 42 U.S.C. § 405(g). Doc. 7-1 at 6-10; Doc. 7-1 at 13-27; Doc. 7-1 at 91; Doc. 7-1 at 98.

### B. Factual Background

Plaintiff was 40 years old on his alleged onset date. Doc. 7-1 at 78. He had a college education and had worked as an ultrasound technician, contractor, produce clerk, and salesman. Doc. 7-1 at 48; Doc. 7-1 at 63-65. As extensively documented by Plaintiff in his brief, he has had long-standing problems with his right knee and back pain. *See e.g.*, Doc. 7-1 at 331; Doc. 7-2 at 559; Doc. 7-2 at 710-15. Nevertheless, for purposes of his DIB application, he must show that he was disabled between December 13, 2013, and his DLI on December 31, 2014. *See Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979) (a showing that an impairment became disabling after the expiration of the claimant's insured status is insufficient to establish eligibility for DIB). Accordingly, the Court's review and discussion of medical records will generally be confined to the period of December 2013 to December 2014.

In December 2013, Plaintiff was examined Dr. Vudhi Vudhipoom Slabisak, M.D, at North Texas Orthopedic and Spine Specialists. Doc. 7-1 at 309. His symptoms included pain, stiffness, and a decreased range of motion in the left lower back which radiated to the left buttock. Doc. 7-1 at 309. Plaintiff rated his pain as 5-6 on a pain scale of 10, with occasional episodes where the pain was a 10. Doc. 7-1 at 309. Nevertheless, when Plaintiff took his prescribed medication, the pain was tolerable. Doc. 7-1 at 309. An MRI revealed degenerative disc disease at L5-S1 and left side herniated nucleus pulposus with moderate lateral recess stenosis.[1]

---

[1] Herniated nucleus pulposus is a condition in which part or all of the soft, gelatinous central portion of an intervertebral disk is forced through a weakened part of the disk, which can result in back pain and nerve root irritation. https://medlineplus.gov/ency/imagepages/9700.htm (last visited Jan. 28, 2019).

In January 2014, Dr. Slabisak performed an anterior and posterior fusion and posterolateral arthrodesis at L5-S1 with hardware placement. Doc. 7-2 at 242. At post-operative follow ups, Plaintiff reported that his symptoms had improved since the surgery, his pain was moderate, he had 100 percent weight-bearing status, and his activity level had increased. Doc. 7-1 at 296, 299, 303. In March 2014, Plaintiff reported to Dr. Slabisak a 30 percent improvement in pain post-operatively, although he exhibited a decreased range of motion. Doc. 7-1 at 301. The doctor instructed Plaintiff to continue with physical therapy and advised him to begin searching for a job and slowly transitioning back into the work force. Doc. 7-1 at 301.

During the same appointment, Plaintiff complained of moderate right knee pain with no radiation, and it was noted that he had right knee instability from a prior surgery. Doc. 7-1 at 303-04. In June 2014, Plaintiff was fitted with a knee brace. Doc. 7-2 at 545. At his follow-up appointment the next month, he reported zero pain. Doc. 7-2 at 545. Nevertheless, during an appointment with Dr. Slabisak in July 2014, Plaintiff reported that his right knee was in moderate pain and worsening and the pain was exacerbated by motion. Doc. 7-1 at 296. Dr. Slabisak referred Plaintiff for an MRI, which showed prior repair of the knee, but also demonstrated tri-compartmental cartilage irregularities and ligament thickening. Doc. 7-1 at 298; Doc. 7-1 at 626-27. It appears that Plaintiff did not seek further treatment for the knee until February 2015, at which point his DLI had passed. Doc. 7-1 at 291. Even at that time, however, Plaintiff only exhibited significant instability and bowing of his right leg if he did not wear his brace. Doc. 7-1 at 291.

### C. The ALJ's Findings

In August 2017, the ALJ found that Plaintiff, as of his DLI, had the severe impairments of lumbar disc disease with radiculopathy, left shoulder osteoarthritis, and right knee

3

osteoarthritis, but none of the impairments met or equaled a Listing. Doc. 7-1 at 18-19. The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to (1) lift and carry 20 pounds occasionally and 10 pounds frequently; (2) sit for six hours in an eight-hour workday; and (3) walk and/or stand for two hours in a workday with additional postural limitations. Doc. 7-1 at 20. Based on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff could not perform any of his past work but could perform other work in the national economy. Doc. 7-1 at 25-26.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner uses the following sequential five-step inquiry to determine whether a claimant is disabled: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curiam) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the

4

Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Grid Rules, vocational expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment") (quotation omitted).

**III. ARGUMENT AND ANALYSIS**

Plaintiff argues that the ALJ violated *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995) by making a medically unsupported determination of Plaintiff's RFC and ignoring the opinions of his treating and examining sources, namely Drs. Lessner, Bloomgarden, and Brooks. Doc. 10 at 13-18. Plaintiff maintains that the ALJ's error was not harmless because he relied on erroneous legal standards in assessing the evidence, which requires reversal. Doc. 10 at 18-19. Alternatively, Plaintiff argues that the *Ripley* error harmed him because the VE's opinion resulted from the ALJ's defective hypothetical. Doc. 10 at 19-20.

Defendant responds that because an RFC determination is not a medical assessment, the ALJ's assessment of Plaintiff's RFC and his conclusion that Plaintiff was not disabled did not have to be based on the opinion of a doctor. Doc. 12 at 10. Rather, the ALJ based his RFC determination on the credible medical, testimonial, and documentary evidence of record in finding that Plaintiff had some limitations, but they were not disabling. Doc. 12 at 10-11, 13-15. Defendant also notes that the ALJ properly assigned little weight to the named physicians' opinions because they rendered treatment after Plaintiff's DLI, and the state medical consultants both found that Plaintiff's medically determinable impairments were non-severe. Doc. 12 at 12-13. In conclusion, Defendant contends that any error was harmless because the VE's findings were based on the ALJ's valid RFC assessment. Doc. 12 at 16-19.

The RFC is an assessment, based upon all relevant evidence, of a claimant's ability to work, despite his impairments. 20 C.F.R. § 404.1545(a). Stated differently, it is the most a claimant can do, notwithstanding his physical and mental limitations. *Id.* The RFC determination falls solely to the ALJ, who is responsible for resolving any conflicts in the evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam).

In *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), the ALJ ruled that a claimant could perform sedentary work even though there was no medical evidence or testimony supporting that conclusion. *Ripley*, 67 F.3d at 557. The appellate court noted that the claimant's record contained a vast amount of evidence establishing that he had a back problem, but did not clearly establish what effect that condition had on his ability to work. *Id.* Thus, the court remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work. *Id.* at 557-58. However, the *Ripley* panel explained that "[t]he absence of such a statement . . . does not, in itself, make the record incomplete." *Id.* at 557. The panel held that reversal based on an ALJ's failure to fully and fairly develop the record is only appropriate "if the applicant shows that he was prejudiced." *Id.* To demonstrate prejudice, a claimant "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

In this case, the Court need not consider at length whether the ALJ erred under *Ripley*, because Plaintiff simply cannot demonstrate prejudice. Specifically, Plaintiff has not demonstrated that he could and would have produced evidence that might have changed the ALJ's decision. *Brock*, 84 F.3d 728. As noted *supra*, even before his first back surgery, Plaintiff rated his pain as five-to-six on a ten-point scale and stated that the pain was tolerable as long as he took his prescribed medication. Doc. 7-1 at 309. Following his back surgery, Plaintiff repeatedly reported that his symptoms had improved, the pain was moderate, he had 100 percent weight-bearing status, and his activity level had increased. Doc. 7-1 at 296, 299, 303. Further, despite Plaintiff's complaints of pain, his doctor instructed him to continue attending physical therapy and advised him to begin searching for a job so that he could transition back into the

7

work force. Doc. 7-1 at 301. Finally, Plaintiff acknowledged that his knee brace alleviated his pain. Doc. 7-2 at 545. Even after Plaintiff's DLI had passed, he only exhibited significant instability and bowing of his right leg if he did not wear his brace. Doc. 7-1 at 291. While it is clear that Plaintiff's condition worsened after his DLI, the Court cannot reverse the Commissioner's decision based on symptoms and surgeries that occurred after he was no longer insured. *Demandre*, 591 F.2d at 1090. Accordingly, and upon review of the entire record, the Court concludes that Defendant is entitled to summary judgment.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 10, should be **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 11, should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

**SO RECOMMENDED** on February 9, 2019.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute,* 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).